**E-FILED**
Wednesday, 15 December, 2004  04:52:54 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES OF AMERICA
IN THE DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER P. FAIR** | ) | |
|     **Plaintiff,** | ) | |
| **vs.** | ) | |
| **BOARD OF TRUSTEES OF THE** | ) | |
| **UNIVERSITY OF ILLINOIS,** | ) | |
| **RICHARD HERMAN, in his official** | ) | |
| **capacity as Interim Chancellor** | ) | |
| **of the University of Illinois** | ) | **Case No. _____** |
| **at Urbana-Champaign, PATRICIA** | ) | |
| **ASKEW, in her official capacity as Vice** | ) | |
| **Chancellor of the University of Illinois** | ) | |
| **at Urbana-Champaign, RICHARD W.** | ) | |
| **JUSTICE, individually, and WENDY** | ) | |
| **J. SMITH, individually, jointly and** | ) | |
| **severally,** | ) | |
|     **Defendants.** | ) | |

# ORIGINAL COMPLAINT, REQUEST FOR INJUNCTIVE RELIEF AND JURY DEMAND

COMES NOW, Plaintiff CHRISTOPHER P. FAIR, and, by his attorneys,

TEPPER, MANN & GERMAN, P.C., files his Original Complaint and Jury Demand

against the BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, RICHARD

HERMAN, in his official capacity as Interim Chancellor of the University of Illinois at

Urbana-Champaign, PATRICIA ASKEW, in her official capacity as Vice Chancellor of

1

the University of Illinois at Urbana-Champaign, RICHARD W. JUSTICE, individually,

and WENDY J. SMITH, individually, jointly and severally, showing to the Court:

## Jurisdiction

1.  This action is brought pursuant to 42 U.S.C. § 1983.  This Court has

jurisdiction under 28 U.S.C. §§ 1331 and 1343(1), (3)-(4), and the aforementioned

statutory provision.

2.  Plaintiff CHRISTOPHER P. FAIR further invokes the pendent jurisdiction of

this Court to hear and decide claims arising under the laws of the State of Illinois, if any.

## Parties and Venue

3.  Plaintiff CHRISTOPHER P. FAIR is a private citizen of the United States,

currently residing in the County of Champaign, State of Illinois.

4.  Plaintiff, until his dismissal on November 29, 2004, was a student at the

University of Illinois at Urbana-Chicago.

5.  Defendant BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS  is

an entity statutorily created under the laws of the State of Illinois.

6.  Defendant RICHARD HERMAN is a private citizen of the United States, and

he is sued in his official capacity as Interim Chancellor of the University of Illinois at

Urbana-Champaign.  Defendant resides in the County of Champaign, State of Illinois.

7.  Defendant PATRICIA ASKEW is a private citizen of the United States, she is

sued in her official capacity as Vice Chancellor of the University of Illinois at Urbana-

Champaign.  Upon information and belief, this Defendant resides in the County of

Champaign, State of Illinois.

2

8.  Defendant RICHARD W. JUSTICE is a private citizen of the United States, and he is sued in his individual capacity.  Upon information and belief, this defendant resides in the County of Champaign, State of Illinois.

9.  Defendant WENDY J. SMITH is a private citizen of the United States, and she is sued in her individual capacity.  Upon information and belief, this defendant resides in the County of Champaign, State of Illinois.

10.  The actions, events and occurrences made the basis of the Complaint and the reason for the requested injunctive relief occurred in the County of Champaign, State of Illinois.

### First Cause of Action - Injunctive Relief

11.  On or after October 6, 2004, Plaintiff CHRISTOPHER P. FAIR received a copy of a letter from Defendant WENDY J. SMITH, Assistant Dean of Students for the University of Illinois at Urbana-Champaign.

12.  This October 6, 2004 letter is referred to by the University as a "charging" letter, as it describes a charge which has been brought against a student.  The letter, in relevant part, claimed that the following violation of the student code had occurred:

> The Office for Student Conflict Resolution has received information in which it is alleged that on October 4, 2004 you were involved in an incident which would violate the University of Illinois at Urbana-Champaign Code of Policies and Regulations Applying to All Students (Code).
>
> ....
>
> Such conduct, if proven, would fall within the jurisdiction of the student discipline system and would constitute a violation of regulations governing the conduct of students; specifically:

3

Violation of rule(s):  11.E.1, 11.E.9, 11.E.16.h, and
11.E.16.e disciplinary system of <u>Code</u>.

13.  Defendant WENDY J. SMITH set up a meeting with Plaintiff to discuss the incident, and Plaintiff eventually received some information about the charge.  Plaintiff CHRISTOPHER P. FAIR answered a number of questions asked him by the Assistant Dean of Students at their meeting on or about October 6, 2004.  After the Plaintiff had answered the Dean's questions, Defendant WENDY J. SMITH told the Plaintiff that he had the right not to answer any of her questions.

14.  Plaintiff was also told, after the fact, that he had a right to see his file before any questioning.

15.  Plaintiff CHRISTOPHER P. FAIR asked Defendant WENDY J. SMITH what time this supposed incident occurred on October 4, 2004.  The Defendant did not know.

16.  Additionally, Plaintiff requested that the University provide some evidence that would tend to exonerate the Plaintiff, including a police report and a copy of an Order of Protection.

17.  Plaintiff CHRISTOPHER P. FAIR was told that the requested documents would be available at the hearing.

18.  Plaintiff was supposed to meet again with Defendant WENDY J. SMITH on October 13, 2004 to provide the evidence that he would use at the hearing.

19.  At that time, Plaintiff still had not been told when the alleged violation had occurred.  If Plaintiff had known when the alleged violation had occurred, then he could have obtained statements from classmates or teachers regarding my whereabouts.

20.  When Plaintiff CHRISTOPHER P. FAIR showed up for his meeting with Assistant Dean of Students WENDY J. SMITH on October 13, 2004, Plaintiff was informed that she was unavailable.  Instead, he met with Defendant RICHARD W.

4

JUSTICE.  This Defendant was finally able to inform the Plaintiff that the University claimed that he had contact with a DINAH WHITCHURCH at 1:45 p.m. on October 4, 2004.

21.   Plaintiff CHRISTOPHER P. FAIR knew that he had had a class at the time, but he had very little time to prepare a defense as the hearing was set for October 15, 2004.

22.   Plaintiff again requested that the documents that would tend to exonerate him, the police report and Order of Protection, be made available for the hearing.

23.   Defendant RICHARD W. JUSTICE also told the Plaintiff that the documents would be made a part of the hearing record.  Plaintiff asked Defendant RICHARD W. JUSTICE when he would be able to get a copy of his file.  This Defendant said it would be provided once it was ready.

24.   On October 14, 2004 at 4:00 p.m., Plaintiff CHRISTOPHER P. FAIR received a message from the University that his file was ready.  He was able to pick it up the day before the hearing.

25.   The University claimed that Plaintiff had contact with a DINAH WHITCHURCH on October 4, 2004 at about 1:45 p.m.

26.   The Plaintiff's hearing was scheduled to start on October 15, 2004 at 10:30 a.m.  The University postponed the hearing for approximately twenty (20) minutes. During that time, the University provided the Plaintiff with a series of additional documents completely unrelated to the allegations in the "charging" letter.

27.   When the hearing finally started, the University did not attempt to discipline the Plaintiff based upon the allegation contained in the "charging" letter.  Instead, the University brought up other alleged incidents that had absolutely no bearing on the October 4, 2004 alleged incident.

5

28.  In a memorandum written on or about November 22, 2004, Defendant WENDY J. SMITH basically admits that the disciplinary committee based its decision on something other than the alleged incident contained in the charging letter.   Her letter provided, in relevant part, as follows:

> "Mr. Fair also states in his appeal letter that his NO CONTACT started on April 29, 2004.  This is inaccurate.  Mr. Fair signed an Expedited Case Disposition (ECD) on April 19, 2004 that placed him on SUSPENDED DISMISSAL and included a NO CONTACT directive ordering him to have no contact with Dinah Whitchurch (see attached).  The Subcommittee considered this ECD on April 23, 2004 but did not accept it.... Mr. Fair signed a new ECD with the same NO CONTACT directive on April 29, 2004 (see attached).  the April 19, 2004 NO CONTACT directive was in place and was not replaced until the April 29, 2004 ECD was signed containing the same NO CONTACT order he had agreed to on April 19.  Mr. Fair admitted to Dean Smith, Dean Justice, and the Subcommittee that he had contact with Dinah Whitchurch after he had been directed not to have contact.  This contact was the sole basis for the Subcommittee finding that he violated the Code and based on his SUSPENDED DISMISSAL status, the Subcommittee voted unanimously to invoke the DISMISSAL, effective immediately."

29.  Based upon this ruling, the University of Illinois had effectively dismissed the Plaintiff from school and excluded him from campus for all purposes.

30.  The most egregious due process violations committed by Defendants and/or their agents and employees involved the failure to proceed at the final dismissal hearing based on the charges alleged in their charging letter, and the fact that the Defendants attempted to change the charges at the last second, mere minutes before the hearing.  Plaintiff CHRISTOPHER P FAIR was not afforded any chance to defend himself.

6

31.  Another violation in this process included the fact that the University failed to provide Plaintiff with a copy of his file until late in the afternoon the day before the hearing.

32.  Still another violation occurred when a Dean questioned the Plaintiff about the charges without informing him that he had the right to remain silent.

33.  Additionally, the Defendants imposed short time limits for the hearings, including only two (2) hours for the disciplinary hearing and a mere ten (10) minutes with which to appeal the disciplinary hearing.

34.  At the appeal of the disciplinary hearing, which was held on November 29, 2004, as previously stated, the Plaintiff only had ten (10) minutes to present his case.

35.  Significantly, the Defendants chose that time to adduce new evidence, even though the rules for appeals require that no new evidence be heard.

36.  At the appeal, the Defendants again started the actual hearing late, and the appellate judges provided Plaintiff CHRISTOPHER P. FAIR with documents containing new evidence immediately before the appeal.  Plaintiff had prepared for the hearing, but after receiving the new evidence from the University, he was forced to use his ten (10) minutes' time to rebut the new charges.

37.  It is alleged that Plaintiff CHRISTOPHER P. FAIR has a meritorious defense to the charges against him based upon the alleged October 4, 2004 incident, which was charged and not raised at his disciplinary hearing, and the earlier incident, which was not charged but raised at the disciplinary hearing.

7

38.  Regarding the October 4, 2004 alleged incident, Plaintiff CHRISTOHER P. FAIR was in his Speech and Hearing Science 120 Class.  This particular class meets in the Engineering Hall on Green Street.  There was no way that Plaintiff could be in class at the same time he was supposed to have been violating a no contact order.

39.  Regarding the prior incident, Plaintiff CHRISTOPHER P. FAIR can establish that any contact made on or about April 27, 2004 was by the alleged victim contacting him.  This can be established through telephone or cell phone records and testimony.

40.  Moreover, a no contact order was not in effect at the time.  The University has claimed that a no contact was in effect, but even the documents provided by the University establish, beyond a reasonable doubt, that the no contact was not yet in effect.

41.  The Expedited Case Disposition memorandum attached as EXHIBIT "C" to the attached Affidavit of CHRISTOPHER P. FAIR plainly states that

> this agreement may be voided by the student within three business days of signing by submitting such a request to the Executive Director in writing.  I understand that after the three-day period and *after acceptance by the appropriate Subcommittee on Student Conduct, this agreement is final and binding.*

Exhibit "C" was never accepted "by the appropriate Subcommittee on Student Conduct," and, therefore, never became "final and binding."

42.  The current dismissal will cause the Plaintiff CHRISTOPHER P. FAIR damage that cannot be remedied with money.  Plaintiff received an offer of employment from Accenture, one of the largest business consulting firms in the country.  This position, as General Consultant, would not be available to the Plaintiff without a degree in Economics.

8

43. The Plaintiff CHRISTOPHER P. FAIR has interviewed with Woodbury Financial, but they have yet to get back to him. If they offer a position, it is understood that the Plaintiff is to have a business-related degree. The same is true for Molyneaux Financial Group, LLC (MassMutual). The Plaintiff has interviewed with them, and they have yet to get back to him. CHRISTOPHER P. FAIR will need some type of business degree to land this job.

44. Plaintiff CHRISTOPHER P. FAIR was also damaged because his job with Gumby's required him to deliver on campus at the University of Illinois at Urbana-Champaign. With the no trespassing order that was ordered with the dismissal on November 29, 2004, the Plaintiff could not retain this job, and he would not be able to have similar jobs in the area.

45. Plaintiff could graduate by taking only two (2) finals ON SATURDAY, DECEMBER 18, 2004, and providing projects to the same professors. If the dismissal was upheld, on the other hand, the Plaintiff would be forced to come back some time in the future and retake a full semester. Thus, the Plaintiff stands to suffer damage in terms of time, which cannot be paid back to him. He has also paid money in tuition, books, rent, incidentals, and other items during the current semester of school.

46. Additionally, there is no reason to believe his credits earned to a degree at the University of Illinois at Urbana-Champaign will be easily transferable or transfer at all to another school.

47.  Defendants violated Plaintiff CHRISTOPHER P. FAIR'S constitutional rights as protected by 42 U.S.C. §1983 et seq. in that the said Defendants, through their actions or inactions, did the following:

a.  Deprived Plaintiff of constitutionally-protected federal rights under the Fifth and Fourteenth Amendments to the United States Constitution and the Constitution and laws of the State of Illinois; and

b.  said deprivation occurred under color of state or federal law.

48.  The Affidavit attached hereto is incorporated herein by reference as if set out word-for-word in this paragraph.

49.  Plaintiff has no adequate remedy at law, in that a money judgment would not be able to get job offers back to him, nor would a money judgment provide him with a Bachelor of Arts degree in Economics.

WHEREFORE, PREMISES CONSIDERED, Plaintiff CHRISTOPHER P. FAIR respectfully prays for judgment for the Plaintiff and against each of the following Defendants, RICHARD HERMAN, in his official capacity as Interim Chancellor of the University of Illinois at Urbana-Champaign, PATRICIA ASKEW, in her official capacity as Vice Chancellor of the University of Illinois at Urbana-Champaign, that the Court issue a temporary injunction ordering said Defendants to refrain from enforcing the Disciplinary Action and all aspects of said Disciplinary Action taken on November 29,

10

2004 against the Plaintiff, that the Court issue a permanent injunction ordering said

Defendants to refrain from enforcing the Disciplinary Action and all aspects of said

Disciplinary Action taken on November 29, 2004 against Plaintiff, for costs, and for such

other and further relief, to which Plaintiff may show himself justly entitled.

## Second Cause of Action - Section 1983

1-48.  Plaintiff CHRISTOPHER P. FAIR hereby realleges paragraphs 1-48 of this

Complaint as though fully set forth herein.

49.  It is further alleged that the actions or inactions by the Defendants

proximately caused Plaintiff serious and permanent damages, and said damages are

continuing in nature.

50.  Because of said actions or inactions of the Defendants, Plaintiff

CHRISTOPHER P. FAIR was forced to retain private counsel.

51.  Pursuant to 42 U.S.C. § 1983, Plaintiff requests payment of attorney's fees

incurred in the prosecution of this matter.

52.  The actions by Defendants RICHARD W. JUSTICE, individually, and

WENDY J. SMITH, individually, were done deliberately or with callous indifference,

evidenced by an actual intent to violate the Plaintiff's rights or reckless disregard for his

rights.

53.  These Defendants were aware of the violations of a clearly established law, in

this case 42 U.S.C. § 1983, the Fifth Amendment and the Fourteenth Amendment, and

they were clearly aware of the rights provided to students, and in failing to provide

adequate notice of the charges, adequate time to prepare, or a copy of the Plaintiff's file, engaged in unlawful conduct.

WHEREFORE, PREMISES CONSIDERED, Plaintiff CHRISTOPHER P. FAIR respectfully prays for judgment for the Plaintiff and against Defendants RICHARD W. JUSTICE, individually, and WENDY J. SMITH, individually, for monetary damages and attorney's fees pursuant to statute, for punitive damages to punish the Defendants and to deter future conduct, costs, and for such other and further relief, both at law and in equity, to which Plaintiff may show himself justly entitled.

### Jury Demand

Plaintiff CHRISTOPHER P. FAIR hereby demands trial by a jury of his peers for all non-injunctive relief.

Dated this the 14th day of December, 2004.

Respectfully submitted,

CHRISTOPHER P. FAIR


By:  S/Greg German
Greg German
TEPPER, MANN & GERMAN, P.C.
Attorneys for Plaintiff
P.O. Box 548
Urbana, Illinois  61803
Tel. (217) 328-4300
Fax (217) 328-4310
State Bar No. 6238851
e-mail: thetortmaster@yahoo.com

12

**STATE OF ILLINOIS**                    )
                                         )    **ss.**
**COUNTY OF CHAMPAIGN**              )


# AFFIDAVIT

CAME BEFORE ME, the undersigned Notary Public in and for the State of Illinois, MR. CHRISTOPHER PHILIP FAIR, personally known to me, and, after being duly sworn according to law, he deposed and testified as follows:

"My name is CHRISTOPHER PHILIP FAIR, and I am over the age of eighteen (18) years.  I am of sound mind, and I have never been convicted of a felony or a misdemeanor involving theft or deceit.  I am competent to make this Affidavit.  My current residence is 307 East White Street, Apartment 21, Champaign, Illinois.  I have been a student at the University of Illinois until on or about November 29, 2004.

I graduated from Neuqua Valley High School in 2000 with an approximate grade point average of 3.86 out of 4.00.  Since then, I have been a business major at the University of Illinois at Urbana-Champaign, and I have worked as a Resident Advisor and a delivery driver for Gumby's.  I was also a manager for the basketball team until November 29, 2004, as well as a member of the Finance Club.

After I matriculated, I planned to accumulate 150 hours towards a dual degree in Finance and Economics.  I am currently only two (2) economics classes from graduating with at least a Bachelor of Arts in Economics from the University of Illinois.

If I were permitted to attend just two of my finals on Saturday, December 18, 2004, in Economics 332 and Economics 414 and hand in a problem set in Economics 414 and a paper in Economics 332, I could graduate with the Economics degree.

1

Just a couple of weeks before my potential graduation, the University of Illinois at Urbana-Champaign, through their agents and employees, dismissed me from the school and informed me that I could not set foot upon the campus. I believe the University and its agents and employees violated my rights.

The most significant violation of my rights involves the failure of the University to provide due process. On or after October, I received a copy of a letter from WENDY J. SMITH, Assistant Dean of Students for the University of Illinois at Urbana-Champaign. This October 6, 2004 letter is referred to by the University as a "charging" letter, as it describes a charge which has been brought against a student. The letter attached as EXHIBIT "A" hereto is a true and correct copy of the letter received by me.

In relevant part, the October 6, 2004 charging letter claimed that the following violation of the student code had occurred:

> The Office for Student Conflict Resolution has received information in which it is alleged that on October 4, 2004 you were involved in an incident which would violate the University of Illinois at Urbana-Champaign Code of Policies and Regulations Applying to All Students (Code).
>
> ....
>
> Such conduct, if proven, would fall within the jurisdiction of the student discipline system and would constitute a violation of regulations governing the conduct of students; specifically:
>
> > Violation of rule(s): 11.E.1, 11.E.9, 11.E.16.h, and 11.E.16.e disciplinary system of Code.

The Assistant Dean of Students, WENDY J. SMITH, set up a meeting with me to discuss the incident, and I eventually received some information about the charge about a week later, approximately eighteen (18) hours before the hearing. I answered a number of

questions asked me by the Dean of Students at our meeting on or about October 6, 2004.
After I had answered the Dean's questions, I was told by the Dean that I had the right not
to answer any of her questions.   I was also told, after the fact, that I had a right to see my
file before any questioning.  The University of Illinois Disciplinary Officers Procedures
specifically require that a disciplinary officer "[d]iscuss the incident with the student only
after the student has reviewed the file and only if the respondent wishes to do so."
Disciplinary Officers Procedures, at I(E)(2)(d).   I asked Assistant Dean of Students
WENDY J. SMITH when this supposed incident occurred on October 4, 2004.  She did
not know.  I asked her if the University would provide some evidence that would tend to
exonerate me, including a police report and a copy of an Order of Protection.  I was told
that the documents would be available at the hearing.

     I was supposed to meet again with WENDY J. SMITH on October 13, 2004 to
provide the evidence that I would use at the hearing.  I had still not been told at that time
when the alleged violation had occurred.  If I had known when the alleged violation had
occurred, then I could have gotten statements from classmates or teachers regarding my
whereabouts.

     When I showed up for my meeting with Assistant Dean of Students WENDY J.
SMITH on October 13, 2004, I was informed that she was unavailable.  Instead, I met
with Executive Director RICHARD W. JUSTICE.  He was finally able to inform me that
the University claimed that I had contact with DINAH WHITCHURCH at 1:45 p.m. on
October 4, 2004.  I knew that I was in class at the time, but I had very little time to
prepare a defense as the hearing was set for October 15, 2004.  I again requested that the
documents that would tend to exonerate me, the police report and Order of Protection, be
made available for the hearing.  I was again told that the documents would be made a part

3

of the hearing record.  I asked RICHARD W. JUSTICE when I would be able to get a copy of my file.  The Executive Director said it would be provided once it was ready.

On October 14, 2004 at 4:00 p.m., I received a message from the University that my file was ready.  I was able to pick it up the day before the hearing.  In it, I found what was apparently the alleged incident complained about in the charging letter.  The University claimed that I had contact with a DINAH WHITCHURCH on October 4, 2004.  The copy of the CASE INTAKE MEMORANDUM attached hereto as EXHIBIT "B" is a true and correct copy.

My hearing was scheduled to start on October 15, 2004 at 10:30 a.m.  The University postponed my hearing for approximately twenty (20) minutes.  During that time, the University provided me with a series of additional documents completely unrelated to the allegations in the "charging" letter.

When the hearing finally started, the University did not attempt to discipline me based upon the allegation contained in the "charging" letter.  Instead, the University brought up other alleged incidents that had absolutely no bearing on the October 4, 2004 alleged incident.  In a memorandum written on or about November 22, 2004, WENDY J. SMITH basically admits that the disciplinary committee based its decision only on something other than the alleged incident contained in the charging letter.   The letter provided, in relevant part, as follows:

> "Mr. Fair also states in his appeal letter that his NO CONTACT started on April 29, 2004.  This is inaccurate.  Mr. Fair signed an Expedited Case Disposition (ECD) on April 19, 2004 that placed him on SUSPENDED DISMISSAL and included a NO CONTACT directive ordering him to have no contact with Dinah Whitchurch (see attached).  The Subcommittee considered this ECD on April 23, 2004 but did not accept it.... Mr. Fair signed a new ECD with the same NO CONTACT directive on April 29, 2004 (see attached).  the April 19, 2004 NO CONTACT directive

4

was in place and was not replaced until the April 29, 2004 ECD was signed containing the same NO CONTACT order he had agreed to on April 19. Mr. Fair admitted to Dean Smith, Dean Justice, and the Subcommittee that he had contact* with Dinah Whitchurch after he had been directed not to have contact. This contact was the sole basis for the Subcommittee finding that he violated the Code and based on his SUSPENDED DISMISSAL status, the Subcommittee voted unanimously to invoke the DISMISSAL, effective immediately.

Thus, the most egregious due process violations committed by the University of Illinois at Urbana-Champaign and/or its agents and employees involved the failure to proceed at the final dismissal hearing based on the charges alleged in their charging letter, and the fact that the University attempted to change the charges at the last second, mere minutes before the hearing. I was not afforded any chance to defend myself.

Another violation in this process included the fact that the University failed to provide me with a copy of my file until late in the afternoon the day before the hearing. Still another violation occurred when a Dean questioned me about the charges without informing me that I had a right to remain silent. Additionally, the University had short time limits for the hearings, including only two (2) hours for the disciplinary hearing and a mere ten (10) minutes with which to appeal the disciplinary hearing.

At the appeal of the disciplinary hearing, which was held on November 29, 2004, as previously stated, I only had ten (10) minutes to present my case. Significantly, the University chose that time to adduce new evidence, even though the rules for appeals require that no new evidence be heard.

_____

\* I admitted contact with the alleged victim because she called me on the phone. I never admitted to the Violation of a no contact order, even if one had been in effect at the time.

5

At the appeal, the University again started the actual hearing late, and the appellate judges provided me with documents containing new evidence immediately before the appeal. I had prepared for the hearing, but after receiving the new evidence from the University, I was forced to use my ten (10) minutes' time to rebut the new charges.

I have a meritorious defense to the charges against me based upon the alleged October 4, 2004 incident, which was charged and not raised at my disciplinary hearing, and the earlier incident, which was not charged but raised at the disciplinary hearing. Regarding the October 4, 2004 alleged incident, I was in my Speech and Hearing Science 120 Class. This particular class meets in the Engineering Hall on Green Street. There was no way that I could be in class at the same time I was supposed to have been violating a no contact order. Additionally, I can establish that the alleged victim has sought to have me removed from the school because of prior jealousy. This is established through tape recordings and e-mails. Regarding the prior incident, I can establish that any contact made on or about April 27, 2004 was by the alleged victim contacting me. This can be established through telephone or cell phone records and testimony. Moreover, a no contact order was not in effect at the time. The University has claimed that a no contact was in effect, but even the documents provided by the University establish, beyond a reasonable doubt, that the no contact was not yet in effect. The Expedited Case Disposition memorandum attached as EXHIBIT "C" is a true and correct copy. Looking at the last paragraph of the ECD, it plainly states that

> this agreement may be voided by the student within three
> business days of signing by submitting such a request to
> the Executive Director in writing. I understand that after
> the three-day period and *after acceptance by the appropri-*
> *ate Subcommittee on Student Conduct, this agreement is*
> *final and binding.*

6

As can be seen by looking at Exhibit "C," it was never accepted "by the appropriate Subcommittee on Student Conduct," and, therefore, never became "final and binding."

The current dismissal will cause me damage that cannot be remedied with money. I have received a job offer from Accenture, one of the largest business consulting firms in the country. The Accenture position would involve general consulting. This position would not be available to me without a degree in Economics.

I have interviewed with Woodbury Financial, and they have yet to get back to me. If they offer a position, I am certain it will be contingent on a business degree. The same is true for Molyneaux Financial Group, LLC (MassMutual). I have interviewed with them, and they have yet to get back to me. I will need some type of business degree to land this job.

I am also injured because my job with Gumby's required me to deliver on campus at the University of Illinois at Urbana-Champaign. With the no trespassing order that was ordered with the dismissal on November 29, 2004, I could not retain this job, and I would not be able to have similar jobs in the area.

I could graduate with taking only two (2) finals and providing projects to the same professors. If the dismissal was upheld, I would be forced to come back some time in the future, and retake a full semester. This has damaged me in terms of time, which cannot be paid back to me. I have also paid money in tuition, books, rent, incidentals, and other items.

Dated: 12/14/04

S/Christopher Philip Fair

_____

CHRISTOPHER PHILIP FAIR

SUBSCRIBED and sworn to before me, the undersigned Notary Public by the Affiant on the aforementioned date.

S/Allison Perry

[Seal]

_____

NOTARY PUBLIC, STATE OF ILLINOIS

------SEALED------

8

The JS – 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

Christopher P. Fair

## DEFENDANTS

Board of Trustees of the University of Illinois Richard H. Herman, Patricia Askew, Richard W. Justice, Wendy J. Smith

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Champaign__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Champ/Sangamon__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mr. Greg German    (217) 328-4300
TEPPER, MANN & GERMAN, P.C.
P.O. Box 548, Urbana, Illinois 61803-0548

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☒ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. Sec. 1983, violations of 5th Amendment & 14th Amendment; Temp. & Perm. Injunction

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

**DEMAND $**
Preliminary Injunction

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE    12/15/04

SIGNATURE OF ATTORNEY OF RECORD